## STATE, Plaintiff-Appellee, v. HECKATHORNE, Defendant-Appellant.

Ohio Appeals, Seventh District, Columbiana County.

No. 693.   Decided December 13, 1951.

J. L. MacDonald, Pros. Atty., Lisbon, for plaintiff-appellee.
Donald E. Smith, East Liverpool, for defendant-appellant.

## OPINION

By PHILLIPS, J.

On April 20, 1950, a jury in the court of common pleas found defendant guilty as charged, jointly with John Martin Wasson, of armed robbery upon an indictment laid under §12432-1 GC; guilty of operating a motor vehicle without the owner's consent on the first count of the indictment, and not guilty of stealing that automobile upon the second count of the same indictment laid under §12619 GC.

Those indictments read respectively as follows:—

"State of Ohio, Columbiana County, SS.

"Court of Common Pleas. Case No. 6276.

"Of the Term of January in the Year of our Lord, one thousand nine hundred and fifty.

"The Jurors of the Grand Jury of said county, on their oaths, in the name and by the authority of the State of Ohio, do find and present that John Martin Wasson and Gerald Heckathorne on the 17 day of September in the year of our Lord one thousand nine hundred and forty-nine, at the County of Columbiana aforesaid, being then and there armed with a 22 cal. automatic pistol and a tear gas pen unlawfully and by putting in fear robbed one Ruth McGill of Nineteen Dollars ($19.00) in money. Contrary to the statute in such case made and provided, and against the peace and dignity of the State of Ohio."

The second indictment reads as follows:—

"State of Ohio, Columbiana County, SS.

"Court of Common Pleas. Case No. 6285.

"Of the Term of January in the year of our Lord, one thousand nine hundred and fifty.

"The Jurors of the Grand Jury of said County, on their oaths, in the name and by the authority of the State of Ohio, do find and present that John Martin Wasson and Gerald Heckathorne on the 17 day of September in the year of our Lord one thousand nine hundred and forty-nine, at the County of Columbiana aforesaid, unlawfully stole from one Mike Turk a motor vehicle, to-wit: a 1949 Station Wagon, Buick, Model No. 59 automobile, of the value of Three Thousand Seven Hundred and no/100 Dollars.

"Second Count:—

"And the Jurors of the Grand Jury aforesaid, on their said oaths, in the name and by the authority of the State of Ohio, do further find and present that said John Martin Wasson and Gerald Heckathorne on the date aforesaid and at the County aforesaid, unlawfully drove and operated a motor vehicle, to-wit, a 1949 Station Wagon Buick, Model No. 59 automobile, being the property of Mike Turk and being of the value of Three Thousand Seven Hundred and no/100 Dollars without the consent of the owner thereof. Contrary to the statute in such case made and provided, and against the peace and dignity of the State of Ohio."

By agreement of counsel both of such indictments were joined as separate counts of one indictment and tried together.

In his opening statement in that trial the state's attorney said:—

"Also the court has instructed you that although there are two Indictments returned here, by agreement of counsel, the Indictments are both presented to you and this case is being tried as if the Armed Robbery Indictment were made a third count or as if it was all one Indictment, and the various offenses are separate counts in the Indictment, that is, Stealing a Motor Vehicle, Driving the Same Without the Owners Consent and Armed Robbery."

Defendant filed a general motion for a new trial. On May 15, 1950, the trial judge caused the following entry to be spread upon the docket of the court of common pleas:—

"This day this cause coming on to be heard on the motion of the defendant, Gerald Heckathorne, for a new trial. The defendant, Gerald Heckathorne, appeared in open court together with his counsel; also appeared the Prosecuting Attorney on behalf of the State of Ohio.

"The matter was argued by counsel for the defendant and by the Prosecuting Attorney on behalf of the State of Ohio; and upon consideration, the defendant, Gerald Heckathorne's

motion for a new trial in the Armed Robbery count is sustained and the verdict of the Jury is set aside and a new trial is ordered. Exceptions to the State.

"The motion of the defendant, Gerald Heckathorne, for a new trial in the count of operating a motor vehicle without the owner's consent is overruled. Exceptions to the defendant.

"And this cause is continued."

Upon retrial on the charge of armed robbery a jury found defendant guilty on June 23, 1950, of armed robbery upon the following indictment laid under §12432-1 GC:—

"Indictment for robbery.

"The State of Ohio, Columbiana County, SS.

"Court of Common Pleas. Case No. 6276.

"Of the Term of January in the year of our Lord, one thousand nine hundred and fifty.

."The Jurors of the Grand Jury of said County, on their oaths, in the name and by the authority of the State of Ohio, do find and present that John Martin Wasson and Gerald Heckathorne on the 17th day of September in the year of our. Lord one thousand nine hundred and forty-nine, at the County of Columbiana aforesaid, being then and there armed with a 22 caliber automatic pistol and a tear gas pen unlawfully and by putting in fear robbed one Ruth McGill, d. b. a. Truckers Inn of Nineteen Dollars ($19.00) in money. Contrary to the statute in such case made and provided and against the peace and dignity of the State of Ohio."

The trial judge entered judgment of conviction upon the verdict of the jury and sentenced defendant "to be imprisoned in the Ohio State Penitentiary at Columbus, Ohio, for a term of not less than ten nor more than twenty-five years, said sentence to begin at the expiration of his sentence for operating a motor vehicle without the owner's consent, heretofore pronounced by this court, in case No. 6285. Judgment against the defendant for costs."

Defendant appealed from that judgment on questions of law, and by assignments of error contends:—

"1. The court erred by not granting the motion for a directed verdict of not guilty at the end of the case in the first trial of said case and particularly erred by not granting the same at the end of the entire case.

"2. The court erred in bringing the jury back for further instructions and more particularly the manner in which he did comment concerning the evidence, in both the first and second trial when the same had not been requested by the jury or anyone else.

"3. The court further erred in refusing defendant's plea,

of former jeopardy, and in not permitting the defendant a trial on this plea in accordance with §13444-5 GC.

"4. The court further erred, as a matter of law, in the additional instructions that were given to the jury in both the first and second trial.

"5. For other errors apparent in the records to which the defendant objected."

The amended bill of particulars filed by the state's attorney on June 12, 1950, in accordance with defendant's request, stated, among other things:—

"That the defendants, John Martin Wasson and Gerald Heckathorne, on the 17th day of September, 1949, at or about the hour of 6:00 o'clock, A. M., being masked to conceal their identity, and one of said defendants being armed with a 22 caliber automatic pistol, the other defendant being armed with a tear gas gun (fountain pen type), unlawfully and by putting in fear, robbed one Ruth McGill, d. b. a. Truckers Inn of $19.00 in money."

The amended bill of particulars stated further, among other things, that Ruth McGill, named in the indictment, "was put in fear by the said John Martin Wasson and Gerald Heckathorne, through and by virtue of the action of John Martin Wasson and Gerald Heckathorne, in pointing, exhibiting and brandishing the 22 caliber automatic pistol and the tear gas gun," (shaped like a fountain pen), "in a manner which threatened personal harm and violence to her," about six o'clock on the morning of September 17, 1949, when the evidence discloses two men, wearing masks entered the Truckers Inn, situated on Eighth and Main Streets in Wellsville, Columbiana County, Ohio, owned and operated by her as sole proprietor, and announced "this is a stick up," and ordered those in the Truckers Inn at the time not to move.

There is evidence that when the masked men announced "this is a stick up" a customer in the Truckers Inn offered resistance, whereupon the tear gas gun was discharged, and that customer was incapacitated temporarily; that a waitress in the Truckers Inn, who witnessed such encounter and who had access to the cash register and acted as cashier, notified Ruth McGill, who was then dosing in a chair in the back room, of such robbery; that Ruth McGill's husband was washing dishes in an adjoining room; that meanwhile the masked men had taken $19.00 in currency from the cash register in the Truckers Inn and escaped.

Further there is evidence that a station wagon automobile owned by Turk Motor Sales, Inc., had been parked by an executive of that corporation in East Liverpool on the evening

of September 16th, and its disappearance had not been discovered until the morning of the 17th; that shortly after such armed robbery that wrecked station wagon automobile was found about a mile east of the Truckers Inn; that defendant Heckathorne was lying unconscious by the side of that automobile with a 22 caliber automatic pistol and two pieces of black cloth shaped like masks lying beside him; that upon arrival at the hospital a search of defendant Heckathorne's person revealed, among other things, a tear gas gun, shaped like a fountain pen, $19.00 in currency and a quantity of 22 and 38 caliber tear gas shells.

Subsequently a search of defendant Heckathorne's home revealed two pieces of black cloth, which appeared identical to the material from which such masks were made; that a laboratory examination of that cloth revealed that the mask pieces could have come from the same pieces of cloth as those found in defendant's home; that the cut edges of one of the pieces of cloth found in defendant's home matched perfectly with one of the cut edges of one of the cloth masks.

On retrial defendant denied that he was one of the masked men who participated in the armed robbery of Truckers Inn. He testified that he was kidnapped by three masked men, who forced him to exchange clothes with one of them, to remain in the station wagon, to which reference has been made, by another of them, while presumably two of the three committed the armed robbery; that later the same evening he was forced to dress in his own clothing, ordered into the station wagon, and struck upon the head with a gun, after which he remembered nothing until he regained consciousness in a hospital in East Liverpool.

In arguing his first assignment of error defendant contends that in the first trial the state did not prove that Ruth McGill, the proprietor of Truckers Inn, was in the presence of the armed robbers when the armed robbery was committed, and accordingly was not put in fear by the armed robbers; that the armed robbery was not established, and that therefore defendant's motion for acquittal should have been sustained, or the "trial judge should have charged the jury respective to lesser crimes which may have been incorporated in the more serious offense, to-wit: petit larceny."

By brief the state's counsel said:—

"As a matter of fact, Ruth Magill was in the presence of the armed robbers and was put in fear, exactly as stated in the Bill of Particulars, as is shown in the record of the second trial of this case. (Record No. 2, Page 88). Although it is true that the evidence failed to disclose this on the first trial

of the case, due to the fact that Ruth Magill did not appear as a witness and her deposition was not taken or offered by the State, in evidence."

In the interest of accuracy in presenting defendant's contention urged in his second assignment of error that the trial judge "erred in bringing the jury back for further instructions and more particularly the manner in which he did comment concerning the evidence, in both the first and second trial when the same had not been requested by the jury or anyone else," we quote verbatim from the brief of counsel, as follows:—

"For the second trial the jury retired at 10 o'clock and without a request from the jury or counsel, the court did recall the jury to the jury box at 3:30 P. M. where they reported they could not agree. Whereupon the court recharged the jury by reviewing the evidence as submitted on behalf of the plaintiff and defendant. During the course of said charge the court did review certain items of evidence as being uncontradicted (pp. 458-459, Record No. 2) whereas in truth said evidence was contradicted either in fact or by inference. In particular the court did state that it was uncontradicted that Ruth Magill, the alleged victim, was in the presence of the robbers and that she was afraid. Yet her presence in the restaurant proper was unseen and unnoted by any other of the State's witnesses and in particular they had testified that Mrs. Magill was not present at the time said robbers were in the restaurant. Only her testimony placed her in the restaurant. Hence the court did present to the jury a false picture wherein they could reach no other conclusion other than the fact that Mrs. Magill had been a victim as advocated by the State.

"The court's statement was such as to indicate that the jury could not disregard the testimony of the State's witness, simply because the defendant did not produce evidence to dispute it. Since the defendant's plea was to the effect that he was not present in the room then he could not know what took place so as to contradict the state's testimony. The jury still had the right to disregard any or all the testimony of the state's witnesses."

In returning the jury to the jury room for further deliberations the trial judge said:—

"Now, Ladies and Gentlemen, you have the duty of determining whether a witness is telling the truth or whether he isn't. If Mr. Heckathorne is telling the truth then, of course, he is not guilty. If he wasn't telling the truth, you, of course, have the testimony, which I explained to you has not been contradicted by other testimony.

"As I explained to you in my charge, in determining what degree of credibility is to be attached to the testimony of the various witnesses you may observe and take into consideration the appearance and demeanor of the witnesses upon the stand, their manner of testifying, their candor, their intelligence, their knowledge of the things concerning which they testify, the correctness of their memory, their opportunity for observation, the reasonableness and probability of their story, their interest, if any, in the outcome of the suit, and their temper and feeling or bias, if any appeared.

"In other words, Ladies and Gentlemen, there is no question but that two armed, masked men came into the Truckers Inn; that before they came there was some money in the cash register; that after they came the bills had disappeared and the change was left. The question is was Mr. Heckathorne one of those men or was he not? I am going to send you back to the jury room Ladies and Gentlemen. I think you should consider this case further. You may retire to the jury room."

Defendant contends that by the foregoing claimed erroneous statement the trial judge shifted the burden of proof from the state to the defendant, and placed upon the defendant the burden of authenticating his testimony by positive proof; and further contends that: —

"This, in effect, shifted the burden of proof from the State to the defendant, placing upon the jury the necessity of believing or disbelieving the defendant's story in order to determine his guilt. Having been clothed with a presumption innocence, it would appear to be unique application of such a presumption to ask the defendant to authenticate his story by positive proof and to require the state only to present circumstantial evidence in order that they maintain the burden of proof beyond a reasonable doubt.

"The clear impact of the court's statement on page 464 of the Record No. 2 was to say: 'The State has proven all the elements of its case but, if the defendant can prove to your satisfaction that he was not one of the robbers, then he is innocent. If he can't prove it then he is guilty. This was tantamount to depriving the jury of its right and duty to determine all the facts in the case, to determine if a crime was committed at all, and to relieve the State of so proving. It deprived the jury of all rights to disregard the testimony of any of the states witnesses, even the testimony of one 'Dude' Johnson, a confessed stool pigeon and character about town.' (pp. 308, Record No. 2)

"From the entire charge as rendered by the court at this it was clearly evident the court believed the defendant guilty and further believed it was the duty of the jury to so find.

By inference he did clearly state that the defendant had presented an implausible story and that the jury had no alternative but to render a verdict as requested by the prosecution."

By his third assignment of error the defendant urges that "the court further erred in refusing defendant's plea of former jeopardy, and in not permitting the defendant a trial on this plea in accordance with §13444-5 GC."

With reference to that assignment of error the state's attorney argues by brief:—

"However, it is conceded that the proof as adduced on the first trial (Record No. 1) is at variance with the statement contained in the Bill of Particulars as filed by the Prosecuting Attorney. Therein it was stated that '* * * the said Ruth Magill was put in fear * * *.' It is admitted that the state did not prove on the first trial that Ruth Magill was put in fear, or was in the presence of the armed robbers. This was the reason the trial court was disposed to sustain the defendant's motion for a new trial."

Answering defendant's argument advanced in behalf of his third assignment of error the state's attorney said in his brief:—

"The necessary result of granting the defendant's motion for a new trial is to set aside the whole verdict, and this, being at the defendant's own instance, does not operate as either an acquittal or a bar to further prosecution of any part of the offense charged. See 12 O. Jur., at page 214, Section 184 and authorities quoted therein, especially State v. Behimer —20 Oh St 572 and §13449-4 GC."

The trial judge refused to charge the jury after argument in writing and before charging the jury generally, as requested by defendant's counsel, that:—

"First, if you find from all the evidence, that the defendant was one of the armed men in the restaurant known as Trucker's Inn, and if you further find from all the evidence that Ruth McGill was not in the restaurant proper and not in the physical presence of the armed men, and if you find that one of these two armed men took some money from the cash register then the defendant would not be guilty of Armed Robbery, but would be guilty of Larceny. If you find him guilty of Larceny you shall then find the amount of money that was so taken from said cash register."

"Second, if you find from all the evidence that the defendant was one of the armed men in the restaurant known as Trucker's Inn, but find from all the evidence that Ruth McGill was not in the restaurant proper and not in the physical presence of the armed men then you shall find the defendant not guilty of robbery."

In refusing to charge the jury the first request as submitted to him the trial judge said:—

"This matter was brought up at the close of the state's evidence and again at the close of all the evidence on a motion to take the matter from the jury, but it is the court's opinion that even if Ruth McGill was not in the room, if an employee was in the room and such employee had control of the cash register, that is, the right to use the cash register by putting money in it or making change from it and that this employee was frightened from the room by the robbers and then the robbers took money from the register that would be robbery. For that reason this charge will not be given, and the defendant may have his exception."

In refusing to charge the jury the law stated in the second request as submitted to him the trial judge said:—

"That is practically the same principal as the first special request and will be refused for the same reason and the defendant may have his exception."

Appellant's counsel has failed to call our attention to "other errors apparent in the records to which the defendant objected," as alleged as a ground of error, nor to comply in respect thereto with the provisions of Rule VII of this court that his briefs "shall contain a statement of the questions presented and a succinct statement of so much of the cause, referring to the pages of the record, as is necessary to show how the questions arose, together with a statement of the authorities relied upon." Accordingly we will not pass upon this assigned ground of error.

We have considered all of defendant's assigned grounds of error upon which we have passed carefully, and conclude it is sufficient to say that as a result thereof we find no error prejudicial to defendant in any of the respects urged by him therein.

NICHOLS, PJ, GRIFFITH, J, concur in judgment.